THE STATE, DEFENDANT IN ERROR, v. HENRY O'HAGAN,
PLAINTIFF IN ERROR.

Submitted December 8, 1905—Decided February 26, 1906.

1. To publish of a man that he has done that which is lawful and proper, without ironical innuendo, does not under ordinary circumstances tend to injure his reputation.

2. An indictment for libel which set forth that defendant maliciously published of and concerning a certain baker a writing containing the false statement that he refused to recognize the bakers' union (innuendo that he in his business refused to recognize and employ members of the bakers' union, and that all such members, together with all other persons, should refuse to deal with him)— *Held* bad, the words attributed to defendant not being in themselves defamatory, and the indictment containing no averment of facts to show that they bore a defamatory sense.

On error to Passaic Quarter Sessions.

Before Gummere, Chief Justice, and Justices Hendrickson and Pitney.

For the plaintiff in error, *William Hughes.*

For the defendant in error, *Eugene Emley,* prosecutor of the pleas.

The opinion of the court was delivered by

Pitney, J. The plaintiff in error was indicted for libel, and having unsuccessfully moved to quash the indictment for defect of substance appearing on the face thereof (*Pamph. L.* 1898, *p.* 881, § 44), he was put upon trial, found guilty and sentenced to pay a fine. A writ of error having been sued out, the question is raised whether the indictment sets forth a libel. The averment is that the defendant, with intent to vilify one Van Nimwegen and injure him in his business, he being engaged in the manufacture and sale of biscuit, bread, &c., unlawfully and maliciously did write and publish

of and concerning him a certain false and defamatory libel of the tenor following: "All union bread has this label. [Meaning a certain registered device or trade mark of the Journeymen Bakers' and Confectioners' International Labor Union.] See that no other is sold or handled when you make your purchase. A. Van Nimwegen, 57 Clinton street, refuses to recognize the Bakers' Union of Paterson." Meaning that he, the said Andrew Van Nimwegen, in his business aforesaid, refused to recognize and employ members of the Bakers' Union, and that all such members, together with all other persons, should refuse to deal with the said Andrew Van Nimwegen and to purchase any goods manufactured by him as aforesaid.

Assuming, as we must, that the alleged matter was published by the defendant, and assuming it to have falsely attributed to Van Nimwegen a refusal to recognize the Bakers' Union and a refusal to employ members of the union, the question remains whether it is libelous. Is it, in a legal sense, defamatory?

The difficulty of accurately defining a libel has been often alluded to. *Towns. Sl. & L.*, §§ 20, 22, and cases cited in the notes. In all well-considered definitions that have come to our notice, however, the notion of defamation is expressed. The language published must injure, or at least tend to injure, the reputation in which a man is held by his fellowmen. Blackstone says that libels in the criminal sense are malicious *defamations* of any person, made public by either printing, writing, signs or pictures, in order to provoke him to wrath, or expose him to public hatred, wrath, contempt or ridicule. 4 *Bl. Com.* 150. Odgers says: "In cases of libel, any words will be presumed defamatory which expose the plaintiff to hatred, contempt, ridicule or obloquy, which tend to injure him in his profession or trade, or cause him to be shunned or avoided by his neighbors." *Odg. Lib. & S.* 21.

But the publication set forth in the present indictment does not impute to Van Nimwegen any unlawful or improper conduct. Even assuming that we may adopt the extensive sense embodied in the innuendo, the words import merely

that Van Nimwegen refused to recognize and employ members of the Bakers' Union, and that all such members, together with other persons, should for this reason refuse to deal with him. There is here no averment, nor is it to be implied from the language, that Van Nimwegen, *without adequate cause or from improper motive,* discriminated against members of the Bakers' Union. What he is charged with doing he presumably had a perfect right to do, and to publish of a man that he has done that which is legal and proper, without ironical innuendo, does not, under ordinary circumstances, tend at all to injure his reputation.

In *Kelly* v. *Partington,* 5 *Barn. & Ad.* 645 (27 *E. C. L.* 273), which was an action for words spoken, it was held, on motion in arrest of judgment after a general verdict for the plaintiff, that the following words: "She [meaning the plaintiff] secreted one shilling under the till; stating, 'These are not times to be robbed,'" were not defamatory in their nature, and therefore were not actionable, even though followed by special damage. To the like effect is *Clay* v. *Roberts,* 9 *Jur.* (*N. S.*) 580, where it was held no libel to write of a physician that he had met homeopathists in consultation, although it be alleged in the declaration that in the opinion of the profession meeting homeopathists in consultation is improper and against etiquette. In *Homer* v. *Englehardt,* 117 *Mass.* 539, the defendant published in a newspaper a notice concerning the plaintiff, who was a saloon-keeper, stating that in order to get rid of a just claim in court he had set up as a defence the existing prohibitory liquor law, and that this fact was made public in order to caution beer brewers and liquor dealers. The court held that since under the statute of the commonwealth no action was maintainable for the price of liquor sold in violation of law, it was the right of the defendant in such an action to set up in his answer this provision of the statute; that the publication in question did not charge that the plaintiff falsely or even unsuccessfully set up the defence in question, but simply that he did in fact set it up. The court declared that, the plaintiff

having a right to make this defence, it was not libelous to publish the statement that he had done so.

In the case before us it is argued by the learned prosecutor of the pleas that the language of the publication was calculated to hold up the person at whom it was aimed as an object of contempt and bring him into disfavor and discredit with a large number of persons whose patronage helped to support his business and contributed to his means of livelihood. If the indictment had set forth such a state of facts as this, we by no means hold that it would not have been a good indictment for libel. A man's reputation consists in the esteem in which he is held by his fellow-men. And if a tradesman has amongst his customers, or amongst those who naturally might become his customers, any considerable number of persons in whose estimation a certain course of lawful conduct on his part would be deemed (rightly or wrongly) a ground of reproach and a good cause for withdrawing trade from him, we can understand that it might be held libelous to maliciously publish concerning him a writing falsely attributing to him such lawful conduct. The present case calls for no decision of this question, for the indictment does not set forth such a case. As already remarked, it does not, under normal conditions, injure a man's reputation to falsely accuse him of doing that which he has a perfect right to do. If the publication is defamatory because of special conditions, these ought to be alleged by way of prefatory averment. *State* v. *Mott,* 16 *Vroom* 494. The present indictment contains no such averment, and as we look upon it, everything contained in it might be admitted as true without giving rise to the inference that Van Nimwegen's reputation was injured in the least.

It follows that the indictment sets forth no criminal offence, and so the judgment should be reversed.